# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| PULTE HOMES TENNESSEE LIMITED PARTNERSHIP, ) ) ) Plaintiff, ) ) v. ) ) PBG OF SOUTH CAROLINA, INC., ) PALM BEACH GRADING, INC., and ) EUGENE EICHELBERGER, ) ) Defendants. ) | Case No. 3:17-cv-1218 Judge Aleta A. Trauger |

## MEMORANDUM AND ORDER

Pending before the court are two Motions to Dismiss. The first (Docket No. 18) was filed by Palm Beach Grading, Inc. ("Palm Beach Grading"), to which the plaintiff, Pulte Homes Tennessee Limited Partnership ("Pulte"), has filed a Response (Docket No. 26). The second (Docket No. 20) was filed by Eugene Eichelberger, to which Pulte has filed a separate Response (Docket No. 27). For the reasons discussed herein, Palm Beach Grading's motion will be denied and Eichelberger's motion will be granted in part.

## BACKGROUND[1]

On October 2, 2015, Pulte, a land developer, contracted with PBG of South Carolina, Inc. ("PBG") for infrastructure improvements and related work on a Tennessee land development known as Southern Springs. The parties signed a Master Land Trade Contractor Agreement ("Agreement") that called for PBG to perform work on Phases 1 and 2 of the multi-phase development project. Eichelberger, PBG's Vice President, signed the Agreement on behalf of

---

[1] The facts are taken in the light most favorable to Pulte.

1

PBG. On January 27, 2016, PBG became a licensed contractor in the state of Tennessee. On February 15, 2016, the Phase 1 Schedules ("Schedules")—detailing the construction work PBG was to perform during Phase I—were executed by Pulte and PBG and incorporated into the Agreement. Disputes later arose regarding the quality and timeliness of PBG's performance. As a result, Pulte was required to bring in other contractors to complete and correct PBG's work. On August 18, 2017, Pulte terminated the Agreement.

On August 28, 2017, PBG placed a lien for approximately $1.3 million on the Southern Springs development project, claiming that it had not been paid for labor, equipment, materials, and services related to the project. On September 21, 2017, PBG amended the lien to nearly $1.9 million. Eichelberger signed both liens on behalf of PBG. PBG has not filed suit or otherwise taken action to enforce the lien. On September 1, 2017, Pulte filed its Complaint in this court against PBG, Eichelberger, and Palm Beach Grading, a separate entity which Pulte alleges is an alter ego of PBG (Docket No. 1). On November 7, 2017, Pulte amended its Complaint, bringing a host of charges related to the defendants' performance pursuant to the Agreement. (Docket No. 16.) In addition, Pulte alleges slander of title against the defendants, based on the lien filed by PBG.

## **LEGAL STANDARD**

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require only that a plaintiff provide "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the

grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *Twombly*, 550 U.S. at 556. According to the Supreme Court, "plausibility" occupies that wide space between "possibility" and "probability." *Iqbal*, 556 U.S. at 678. If a reasonable court can draw the necessary inference from the factual material stated in the complaint, the plausibility standard has been satisfied.

## ANALYSIS

On November 28, 2017, Palm Beach Grading and Eichelberger filed separate motions to dismiss. Palm Beach Grading seeks dismissal of the slander of title claim against it. (Docket No. 18.) Eichelberger seeks to dismiss all claims against him. (Docket No. 20.)

1. Slander of Title Claims

Slander of title has long been recognized as a tort in Tennessee. *Phillips v. Woods*, No. E200700697COAR3CV, 2008 WL 836161, at *7 (Tenn. Ct. App. Mar. 31, 2008).

> [O]ne may become liable by asserting title in bad faith and without probable cause to the injury of another. Libel of title has been

3

> found to occur when a person . . . without privilege to do so, willfully records or publishes matter which is untrue and disparaging to another's property rights in land as would lead a reasonable person to foresee that the conduct of a third party purchaser might be determined by the publication, or maliciously records a document which clouds another's title to real estate. To establish a successful claim for libel of title in this state, a plaintiff must prove: (1) that it has an interest in the property; (2) that the defendant published false statements about the title to the property; (3) that the defendant was acting maliciously, and (4) that the false statements proximately caused the plaintiff a pecuniary loss.

*Id*. (internal citations and quotation marks omitted). Pulte alleges that all defendants are liable for slander of title. Pulte has pled facts which, if true, would establish a slander of title based on PBG's filing of the lien against Pulte.[2] However, Palm Beach Grading and Eichelberger contend that the absolute privilege doctrine shields them from any potential liability related to the lien. The absolute privilege doctrine protects any defamatory statements of an attorney or litigant "made in the course of a judicial proceeding." *Simpson Strong-Tie Co. v. Stewart, Estes & Donnell*, 232 S.W.3d 18, 23 (Tenn. 2007). The privilege extends to communications preliminary to a proposed judicial proceeding. *Id*. at 24.

Palm Beach Grading and Eichelberger cite a Tennessee Court of Appeals decision, *Desgranges v. Meyer*, for the proposition that liens are entitled to an absolute privilege and therefore not actionable via a slander of title claim. In *Desgranges*, the court indeed found a lien

---

[2] Palm Beach Grading also asserts that it cannot be liable for slander of title because PBG, a legally separate entity, filed the lien. However, Pulte alleges that Palm Beach Grading and PBG are corporate alter egos. "[T]he question of whether [a] corporate entity is 'a mere instrumentality of an individual or parent corporation' is a question of fact for the finder of fact." *Dog House Investments, LLC v. Teal Properties, Inc.,* 448 S.W.3d 905, 918 (Tenn. Ct. App. 2014) (citing *Electric Power Bd. of Chattanooga v. St. Joseph Valley Structural Steel Corp*., 691 S.W.2d 522, 526 (Tenn. 1985)). If a jury determines that Palm Beach Grading is in fact a corporate alter ego of PBG, Palm Beach Grading would be jointly and severally liable for a finding of slander of title against PBG. *See id*. at 917. Palm Beach Grading is thus not entitled to dismissal for this reason.

absolutely privileged. No. E2003-02006-COA-R3CV, 2004 WL 1056603, at *8 (Tenn. Ct. App. May 11, 2004) ("We hold that statements in a lien served and filed pursuant to Tenn. Code Ann. § 66-11-101, *et seq*., are absolutely privileged when, as here, a suit is timely filed to enforce the lien."). However, the court specifically limited its holding to instances where the lien holder subsequently attempted to enforce the lien by filing suit. The subsequent filing, the court found, was a necessary link to the judicial proceeding that entitled the filer to an absolute privilege. *See id*. ("The Donohoe and Pisano courts both dealt with the filing of a mechanic's lien *followed by a suit to enforce the lien*. Other courts have indicated that, if presented with a similar factual scenario, they would reach the same result, either under their common law or a state statute.") (emphasis in original). The court noted that "[s]ome states have focused on whether the *mere* filing of a lien is a statement in the course of a judicial proceeding protected by an absolute privilege," and cited to two decisions from other states' courts, both of which declined to find an absolute privilege without a subsequent judicial filing. *Id*. (citing *Gregory's, Inc. v. Haan*, 545 N.W.2d 488, 494 (S.D. 1996) and *Jeffrey v. Cathers*, 104 S.W.3d 424, 430 (Mo. Ct. App. 2003) (emphasis in original). With no other indication from Tennessee courts as to whether mere filings of liens ought to be entitled to an absolute privilege, the court will not find one here. Because the lien against the Southern Springs development is not entitled to an absolute privilege, the court will not dismiss Pulte's slander of title claims on privilege grounds.

Eichelberger argues that he cannot be held personally liable for slander of title because he was acting on behalf of PBG. But Tennessee courts have held that tortious conduct can give rise to liability for both individuals and the entities they represent. *See Brungard v. Caprice Records, Inc*., 608 S.W.2d 585, 590 (Tenn. Ct. App. 1980) ("It is settled law that an agent cannot escape liability for tortious acts, including fraud or misrepresentation, against third persons

5

simply because the agent was acting within the scope of the agency or at the direction of the employer."); *Jurgensmeyer v. Prater*, No. M2000-02986-COA-R3CV, 2003 WL 1923826, at *6 (Tenn. Ct. App. Apr. 24, 2003) ("Thus, an individual may be liable for fraud or misrepresentation even when acting as an agent for a corporation."). Eichelberger offers no reason for treating the tort of slander of title differently from fraud or misrepresentation. Pulte's claim for slander of title against Eichelberger will thus not be dismissed at this time.

    2. Eichelberger's Liability for Violation of Licensing Statute and Improper Lien

In Count Six of its Amended Complaint, captioned "Violation of Licensing Statute and Improper Lien," Pulte claims that Eichelberger is statutorily liable for misrepresenting PBG's licensure status at the time the parties entered the Agreement.[3] Specifically, Pulte alleges that "Eichelberger is personally liable for damages pursuant to Tenn. Code Ann. § 62-6-136(c)." (Docket No. 16, p. 13.) That section reads as follows:

> (c) An individual who violates this section and would, but for this section, have limited liability *as owner of an entity* having limited liability protection, including, but not limited to, a corporation, is personally liable for the individual's own representations, acts or omissions to the same extent as if that individual rendered the representations, acts or omissions as an individual.

(emphasis added). But Eichelberger is not an owner of PBG; he is its Vice President. Pulte attempts to maneuver around this disconnect in its Response to Eichelberger's Motion to Dismiss, citing case low "analyzing personal liability for failure to be properly licensed, separate from the liability imposed by Tenn. Code Ann. § 62-6-136(c) . . . ." (Docket No. 27, p. 11.) Were Pulte advancing this case law in support of Eichelberger's liability under, say, Count Three ("Fraud and Misrepresentation Based Upon Being an Unlicensed Contractor"), its arguments

---

[3] Pulte's claim stems from the fact that PBG entered the Agreement on October 2, 2015, but was not a licensed contractor in Tennessee until January 27, 2016.

6

might be availing. Instead, Pulte argues that Eichelberger is subject to statutory liability, pursuant to a section that is explicitly inapplicable to him, based on precedent that *Pulte acknowledges* contemplates liability "separate from the liability imposed by Tenn. Code Ann. § 62-6-136(c)." Because Pulte specifically seeks liability under the licensing statute, the court is bound by the statute's constraints. Pulte's claim against Eichelberger under Count Six is therefore dismissed.

## CONCLUSION

For the foregoing reasons, Palm Beach Grading's Motion to Dismiss is hereby **DENIED**. Eichelberger's Motion to Dismiss is **GRANTED** as to Count Six and **DENIED** in all other respects.

It is so **ORDERED**.

ENTER this 19th day of March 2018.

_____
ALETA A. TRAUGER
United States District Judge